Thank you, Judge Graves, and may it please the Court, my name is Michael Edney and I represent Timothy Barton, who is with us in the courtroom today, as appellant. At issue here are the circumstances where the government may impose what this Court has called the drastic measure of a pre-judgment receivership and seize all a defendant's property before even the drop of discovery, much less proof of wrongdoing at trial. In this case, at the government's request, the District Court took everything from Mr. Barton. It took all assets, and this is the key language that the Court can find at page 595 of the associated with any entity directly or indirectly controlled by Mr. Barton. That included removing him from his only home, a fate spared even Bernie Madoff. The District Court did so without any hearing, three weeks after the government simultaneously filed a civil case and a criminal prosecution against him, and in doing so, deprived him of the resources necessary to combat those charges. How much of the funds have been recovered? Your Honor, the receiver took control of 160 corporations that were directly or indirectly controlled by Mr. Barton. Many of these assets are planted in the ground as real estate assets, and so they're live real estate development projects. The SEC, when it applied for the receivership, had it, and you can find this at the end of the Hahn Declaration, it's at the beginning of the record, I think around page 186 or 187 of the record, had an accounting of the projected value of these assets, and to the SEC, they accounted for more than $70 million. The allegation at issue here is that certain loan agreements were not honored. The SEC says that they're securities, we disagree with that, but the total amount of the loan proceeds at issue is $26.3 million, so that should give the Court some sense of the issues here. Now, of course, this is not all in cash. The purpose of the loan proceeds and the purpose of Mr. Barton's business, working over 30 years, is to conduct real estate development projects, so they're invested in architects and engineers, in permitting, and in the real estate itself, which is under development. Yes, Your Honor, well, that value is included in the $70 million of assets that the SEC projected that the Barton family of companies had. You say the judge didn't hold a hearing. You requested a hearing? We did, Your Honor. You're not appealing the denial of the hearing? Yes, Your Honor, we are appealing the denial. I didn't see that as a separate issue in the brief. We did not put it down as a separate issue in the brief, but we absolutely think that the Court needed to grapple with some serious factual issues. We asked for it. So when you ask, as relief, to vacate for further proceedings, you're asking for the hearing that you were denied, but you didn't appeal directly the denial of the hearing? Your Honor, we did not set that out as a separate issue, but certainly our view is that the Court bypassed several significant factual inquiries that needed to be answered before imposing this receivership, and the receivership came down, Your Honor, hours after we filed our opposition brief. You don't dispute that legally a receivership would be appropriate if it were clear as a necessity to preserve assets. You accept that fundamental principle? Yes, yes. Well, I think... So the question really then is just, does this record show that the government met its burden to a preponderance to show there was a high risk of asset distribution risk? I would take issue with one part of Your Honor's question. I think there are three conjunctive tests under this Court's precedent in Nesphere versus Barron, the 2012 precedent, about what needs to be shown before imposing the receivership. Right. Before we get there, though, because as you know, I was on the Nesphere panel. We distinguished SEC receiverships in Nesphere, and so their brief is principally relying on a case called First Financial, which doesn't seem to articulate that same three-part test. Do you have a response to, or are you familiar with First Financial? I am familiar with First Financial, and I don't think that, Your Honor, in the Nesphere case, and I don't want to speak for Your Honor, but I don't think the Court distinguished the SEC case so much, but instead harmonized it with what it was talking about in the Nesphere case. But First Financial says, what's the test there? The test in First... If you make a... If the government makes a prima facie showing a fraud, that's enough. Your Honor, this Court in First Financial quoted a Seventh Circuit decision that said a part of the analysis is a prima facie showing of securities fraud. Okay. Now, if we step back in First Financial for a second here, Your Honor, nobody was challenging the propriety of imposing the receivership in that case or not. The sole issue in First Financial was whether that receivership could go forward despite the fact that there was a preexisting bankruptcy stay. So this was a description of how it might work in the SEC process, but the Court did not grapple with, and the parties were not contesting, the standards that would follow an SEC receivership. Second, Your Honor, this Court made absolutely clear, and you can find that at page 438 of the First Financial opinion, that the relief of a receivership was ancillary to the SEC having obtained a preliminary injunction against future acts of securities fraud and keeping the corporation from pursuing that purpose. That did not happen here, and I think if you survey both the district court opinions in this circuit and outside this circuit and all circuit court opinions about SEC receiverships, they come after the SEC has gone to the trouble of engaging in the significant proof necessary to obtain a preliminary injunction. What the SEC did here wasn't ex parte, though. It was a significant, as you mentioned, the Hahn Declaration, it was a significant amount of proof given. But then your response, I guess, would be that you contested much of that proof. Well, not only that, but the proof on its face didn't meet the Netsphere standards, and I'm prepared to go through that, but yes, the Hahn Declaration is obviously an important part of this case, but it didn't get there. These were ships, in a sense, passing in the night, Your Honor. The SEC's application was principally focused on its view of the historical events of security fraud, a view that we contest and will contest in the criminal trial. But in your response, you do say that the victims are in China, the funder that may even have duped Mr. Barton, if his story's true, also in China. It almost seemed like your response might itself suggest high risk of asset flight. No, well, no, Your Honor. I mean, I think the, and I'm glad you asked that question, because the premise of the case is that Mr. Barton has all these real estate assets. He has the lender funds in companies he owns or controls, and then he has the real estate assets that were used, that those lender funds were used to buy, and, Your Honor, I think it's particularly important that the Court take a look, take a look, Your Honor, at page 19 of the record, you know, this, and the Han Declaration at earlier points. The Han Declaration goes through and says that these loan proceeds were plowed in the real estate projects. Now, the SEC says it's not the right ones, but, you know, these loan proceeds are in the ground. So their risk of flight is not particularly acute. You know, these are, these type of assets cannot be wire-transferred to Switzerland, right? They have to be sold through public recordation in full view of everyone, and as a matter of fact, Your Honor, when the, when this Court was talking about SEC receivership in the first financial group case, what did it highlight? It highlighted that the district court had gone through and said that the nature of the assets, and this is a quote, cash and securities are such that they may be easily disposed, concealed, or dissipated. This is at page 439 of the opinion. That is an aspect that is absent here, and that's an aspect that this Court later found very important in the Netsphere case, and I think what the Court did, and again, I don't want to get inside the mind of the Court. You know it better than I. But textually, Netsphere was the plaintiff's own money, right? It's outside the SEC context where the SEC is trying to protect a frauded investor's money. Absolutely, Your Honor, and I think, I think what Netsphere teaches is that you can't use a receivership to secure funds for a potential future judgment. So you can't say, well, this man is probably going to lose, and, you know, we got to make sure he has some money to pay. You can't do that with a prejudgment receivership. Instead, you have to go after the raise, the property, and, Your Honor, we think that that is proper to go after the raise or the property. We just don't think that that analysis was gone through by the district court. Again, the district court seized 160 companies, many of which had absolutely nothing to do with these loan proceeds. It surmised that there was some commingling of loan proceeds with the assets of other corporations, but even the SEC did that analysis for only . . . Tell me again, if you don't mind, if you were to prevail, what's the relief for the proceedings is for an evidentiary hearing to apply, in your mind, basically a preliminary injunction standard? No, Your Honor, I think, in my mind, the proceedings are to apply the Netsphere standard, which the district court did not do, and . . . Least drastic. And, Your Honor, I want to be clear about that, right? I mean, if you look at page 125 of the record, this is the SEC's receivership motion. The SEC says that the standard here is a prima facie showing of fraud. It doesn't even cite Netsphere. So what needs to happen here is that they need to show that the corporations they're seizing are, in fact, the properties of their . . . That's the traceability issue. That's the traceability issue, and what J&V v. Adams, the companion case, tells us that when a corporation is not actually a defendant, right, and 97% of these corporations are not defendants, you need to show that they have the ill-gotten gains and that they have no legitimate claim on them, and keep in mind here, the whole point of these loans, the whole point of Mr. Barton's business was to run a real estate development business, and that meant that its real estate development entity was paying architects and engineers and civil engineering services and doing development services and may have been entitled to some of these payments. This is an analysis that wasn't gone through at all, and J&V v. Adams says that if you're going to draw in a corporation that's not a defendant, you need to go through that analysis. That's the type of evidentiary hearing that needs to be had first. So we're going to ask the court to vacate the order appointing the receivership and then direct . . . What about some case law that says vacate effective 90 days from issuance of mandate? Well, Your Honor, I don't think that that would be appropriate. I mean, here the SEC is parking on all the defendant's assets, including his house, okay, and asking questions later about whether it's actually the affected assets, the subject of the litigation . . . Well, what period of time would you think would be appropriate to avoid immediate dissipation if you were to prevail? Well, Your Honor, I think the SEC needs to make a showing that there's a risk of immediate dissipation to begin with, right? I mean, that the SEC didn't even try to do. They looked backwards and said it's prima facie a case of security fraud, game over, right? We don't need to show what's going to happen in the future, and Your Honor, if you look at the facts of this case, we're in a very different situation than somebody running around with a bunch of securities, cash, or bearers' bonds. The assets are real estate planted in the ground that aren't going anywhere. This investigation has been going on for two years, and if Mr. Barton wanted to flee the country or to push assets outside the country, outside the reach of anyone, he could have done that. Instead, he's been plowing ahead with these real estate projects to try to bring them to maturity and make sure everything . . . The attachments are 300 pages that he didn't invest their money in real estate. He bought a plane, and so I'm not sure that what they've shown so far quite matches what you're saying, that it was all put into working development. Your Honor, there are 300 pages, almost none of which address the allegation that he bought a plane. Let me talk about that allegation for just a moment. The evidence is going to show that what the SEC is talking about there is that they're tracing assets going into this company called JMJ Development. This is the main development entity for the defendant in this case, and then JMJ Development, in proximity to those deposits, is paying other expenses. One of those expenses at one point was to put down a $325,000 deposit on a broken-down jet, an asset that he refinanced two months later and brought all the money back into the institution. That jet, frankly, never really got off the ground. I know the allegation of a private jet is a kind of a salacious allegation to suggest that this man was living high on the hog. As it turns out, this jet was for the purpose of flying to far-flung local regional airports where he had these real estate projects. But that is the tail wagging the dog here, Your Honor. This is a $70 million story, not a $325,000 story, and that should not be driving the court's analysis. Let me ask you, what's the status of the criminal charges against your client? Your Honor, the criminal trial is scheduled to go forward in March of 2024 in front of Judge Kincaid in Northern District, a separate judge. We are just getting discovery in now from the government. I can tell you that it totals hundreds of thousands, if not millions, of pages. One of the reasons that we're here, Your Honor, is that it is going to be incredibly difficult to even defend this criminal case with all the volume of the documents here, all the complexity of it, if Mr. Barton doesn't have any resources. I can tell you, for better or for worse, they want to drive this account that he was using his company for personal gain, but unfortunately, he doesn't have any personal assets. His assets were in this company, and now they're all in the hands of the government. So the government is holding all the cards here. It has a legion of FBI agents, prosecutors, and the defendant has no money to defend himself. And there is an aspect of this case, Your Honor, there's an aspect of fundamental fairness about whether this is, to both the civil and criminal justice systems. Is he paying you? Your Honor, he has not paid me since the receivership dropped in October. I am here today to vindicate an issue of fundamental fairness that I think is important to the justice system. And, you know, I had, I guess I would have had an opportunity to withdraw from this case for nonpayment, but I don't think that's the right thing to do. You're a separate criminal lawyer. You're not the criminal lawyer. No, I am the criminal lawyer. Yeah. So I'm in the soup, Your Honor. I just have one question about why you don't think it would be reasonable to do what the Third Circuit did in the Key Bank National Association case, which is vacate the order appointing the receiver, but then hold off on the issuance of the mandate for 90 days in order to give the district court an opportunity to consider the net sphere factors. Because that's what you want the court to do. Your Honor, I understand where the court is coming from on that. I would say in this case, there's layers of error, right? One of the layers of error is whether the court failed to apply the net sphere standards in adopting the receivership in the first place. The next layer of error is over what should the receivership be appointed. And I think that error is so profound that this court should not let the receiver hold on to a wide range of assets for 90 days while the district court sorts it out. You know, again, five... Sixty? What's that? Sixty? I think zero for anything other than the nine wall entities. So there were nine companies... You want to win, and you want to win now. Well, Your Honor, I... Hey, Your Honor, I'll be honest with you. The district court has been very rough on us. And the district court thinks that, you know, Mr. Barton's a bad guy. He thinks he needs to be punished. He's quoting the Book of Ezekiel against us to say that, you know, the wickedness of the wicked falls upon the wicked. And he's holding Mr. Barton accountable. That's not the purpose of a prejudgment receivership, right? Now I've just got to go take and see what he's actually saying. The time for the hammer to drop... I'm sorry. Time's up. But the time for the hammer to drop on Mr. Barton is when the... Not before then. Certainly not before we even have the evidence that suggests that he did produce the discovery. And so, Your Honor, going back to your question, just to answer it first... Your time has expired. Thank you, Your Honor. Thank you very much. You may proceed. Thank you, Your Honor. Ezekiel Hill for the Securities and Exchange Commission. May it please the Court. This appeal challenges four orders, the order appointing a receiver and three orders issued in supervision of that receiver. The receivership order is properly before this Court and should be affirmed. Judge Starr did not abuse his discretion in finding the appointment of a receiver was necessary and appropriate to marshal and preserve funds for allegedly defrauded investors. About 90% of the investor funds were misappropriated and the investor funds were at risk of dissipation absent the stewardship a receiver provides. Judge Starr also did not abuse his discretion by including all Barton-controlled entities in the receivership. The record before Judge Starr demonstrated that numerous Barton-controlled entities had benefited from investor funds and that Barton's commingling had obscured whether other entities under his control had also benefited from those funds. Your brief says several times these fact propositions are unrefuted. But when I read his response, he's disputing almost all the facts. He's saying you left out exculpatory facts, you have an overbreadth problem. So how high in the brief would you have said, could you say that your allegations under any test were unrefuted? Your Honor, the allegations were undisputed with respect to the evidence before the District Court. When the District Court was considering the Commission's motion to appoint a receiver, the Commission put in a great deal of evidence, as Your Honor's alluded to, including the Hahn Declaration, about commingling of funds, about misuse of funds. And then they responded. Mr. Barton responded. He had attachments. He had attachments that did not address the use of funds whatsoever. I believe there were two documents he submitted as evidence. One was the Commission's order of investigation for this matter, and the second was a letter about a potential real estate deal involving property that he held. So you cited a 1974 Northern District of Georgia case to the District Court for the proposition that he didn't need to have a hearing. Yes, Your Honor, I don't believe the issue of whether a hearing is required is properly on appeal at this point. Well, they asked for it below, and they're clearly asking for some evidentiary inquiry on remand. Yes, Your Honor. I understand that he's asking for it now. I don't believe the District Court was required to provide it. I would point out that this was not ex parte. Mr. Barton had the opportunity to submit evidence. Furthermore, the Commission had requested expedited briefing on the receivership motion. The District Court denied that and gave Mr. Barton the full amount of time allowed under the rules to respond to the motion. What's your best circuit authority for an SEC prejudgment receivership when no evidence is taken? Well, Your Honor, I would disagree with the characterization that no evidence was taken. But there's no evidence you're hearing. Maybe just give me, look to me in your brief on page 24, your best authority. The authority you cite is first financial. Yes. But first financial, as he pointed out, did follow after you had obtained a preliminary injunction. That's correct, Your Honor. I don't believe, though, first financial requires a preliminary injunction to be in place for a Commission to request receivership. What's the best circuit authority that nothing's required except what the government gives the District Court? Well, I think, Your Honor, I would dispute the characterization here that it was just what the government gave the District Court. There was a chance to respond by Mr. Barton. But the authority that... In his pleadings, he does respond. He says, in the pleadings, he says, there were less drastic measures. You've got an overbreadth problem, no irreparable harm. Evidence, you left out exculpatory facts. He basically, if we accept the NetSphere test, he challenges the proof on every single prong. Well, yes, Your Honor. And I'd like to turn to the NetSphere test then. First of all, as Your Honor alluded to, NetSphere was not a Commission enforcement action. And as I read it, did not purport to address the standard for appointing a receiver in a Commission enforcement action. In fact, NetSphere addressed what's the appropriate purpose of a receivership and, in fact, recognized that appointing a receiver to preserve investor funds in a Commission enforcement action was an appropriate purpose. Furthermore, to the extent that this Court were to conclude that NetSphere does apply here and those factors need to be satisfied prior to receivership being put in place in a Commission action, I would direct the Court to the District Court's order denying Mr. Barton's motion for a stay pending appeal at docket entry 132 on the District Court docket in which the District Court went through the NetSphere factors and confirmed that at the time it had issued the order appointing a receiver, it had found the NetSphere factors to be satisfied.  It seems like it would be make work. That's certainly my position, Your Honor. Our position, Your Honor, is that the District Court in so much as this Court is of the opinion that NetSphere is required to be applied, the District Court has already run that exercise and provided a written opinion of its findings that NetSphere is satisfied. What's your best case that a post hoc justification like that can validate an original decision? Certainly there's no argument by Mr. Barton that the District Court was without . . . I'm asking you for your best case for that proposition. Even the status updates that the receiver has done, all of which came after the receivership. I'm sorry. What's the basis that we can validate the original appointment of a receiver based on these after-the-fact determinations? Certainly the District Court has jurisdiction to . . . I'm just asking if you've got a case. It would allow us to assess the validity of the original receivership order based on subsequent status updates. Yes, Your Honor. I direct the Court to Silverthorne v. Lard, 460 Federal 2nd, 1175 from 1972, in which this case held that a written . . . excuse me, this Court held that a written order entered after appeal which memorialized or explained a prior ruling is made in aid of the appeal. And this Court held that it was appropriate to consider that and actually was helpful in allowing this Court to examine the case through a thorough understanding of the lower courts possible. 460 F 2nd, 115? 1,175. Okay, thank you. Yes, Your Honor. And so when we look at these after-the-fact determinations, for example, the District Court . . . you can tell me, do they trace how the allegedly defrauded investor's money was put into his personal home? Will we see the tracing to each asset that's now under the receiver's authority? I'm sorry, would you see the tracing in what document, Your Honor? Whatever you're saying has happened since the order, but that you're saying we can look to justify, that he didn't justify his order with, but you're telling us we can. Will I find somewhere that the SEC has demonstrated that the investors who were defrauded, their money ended up, for example, in his home? Your Honor, the District Court's order denying the motion to stay did not engage in a tracing exercise. Tracing is not required, even if you applied the NETSFER standard. The reason tracing is not necessary here is because preservation of the investor assets required the scope of the receivership to be what it was. When you say NETSFER didn't require it, let me quote from NETSFER. The Court lacks jurisdiction to impose receivership of property not the subject of the underlying claim. So how . . . what aspect of your claim connects the legality to his house? The connection is that there was extensive commingling of assets by Mr. Barton into entities under his control. At the time the Commission sought a receivership, it was able to document a great deal of commingling. It was not able to determine all commingling that had occurred. For example, there were assets purchased, real property purchased with investor funds that Mr. Barton then sold. The proceeds from those sales, the Commission was not able to trace at that point in time where those had occurred. So what's your authority that says you can just seize someone's house because it's something the person controls but you haven't traced any illegal assets to it? The entity that was in the receivership was the entity that held the house. It was an entity under Mr. Barton's control and the District Court determined that it was necessary and appropriate to protect investor assets to have the scope of the receivership be everything under Mr. Barton's control in light of the commingling that occurred. Certainly if down the line Mr. Barton was able to demonstrate or the receiver determined that certain assets or entities were in fact divorced from the investor funds, then those might appropriately be outside the scope of the receivership. Okay. I'm not convinced but I hear what you're saying. I thought that burden was on you. You have got to make the tracing. You've got to show it to a proponent so he doesn't have to disprove it. Certainly, Your Honor, tracing would be appropriate at some point in time once it's a possibility. If the standard is that the commission needs to trace everything before even putting a receiver in place, it becomes an invitation to would-be fraudsters to engage in extensive commingling, refuse to share information with the receiver. In this case, Mr. Barton has, in violation of the receivership order, failed to provide information to the receiver that would permit the receiver to engage in exactly the sort of tracing Your Honor is describing. I guess I'm very troubled by that. What I hear you saying is commingling as to some entities is sufficient that the district court could grant a receivership as to all entities. That's what you're saying? That's the determination that Judge Starr made here based on the specific facts before him. It certainly may not be the appropriate determination. And you can get the receivership without even showing which entities were involved in the commingling. All the entities under Mr. Barton's control were not known at the time that the receivership order was entered. And that's why the receivership order specifies some particular entities that were known to have engaged in commingling and have received or benefited from investor funds. But it's more extensive than that because there are other entities that it's simply unknown at that point in time in light of the commingling that occurred and the lack of access to records whether they had also benefited from investor funds. So they were discovered by the receiver? How did they become known? I'm sorry, Your Honor, I didn't catch... How did they become known if they were unknown at the time the receiver was... So the receiver has begun its work and many of the entities were identified once the receiver was in possession of certain documents and able to go through files and identify additional entities that were under Mr. Barton's control. But those entities were in the receivership by function of the receivership order which had already set that scope for the receivership. Just legally again, does the government accept that the Netsphere test applies and argue that it was met or are you saying Netsphere is inapplicable here and there is some other test that is controlling? Yes, Your Honor, the commission's argument here is that Netsphere does not govern although with a caveat, if it did govern the district court ran through that exercise and found that it was met. But the test that I that applies here is whether receivership is necessary or appropriate to protect investor funds and that comes from this court's decision in first financial group in which it found appointment of receiver and a commission enforcement action proper because the receiver was necessary to protect investor funds. It also comes from section 21 D5 of the Exchange Act which is the provision under which the commission sought a receivership which provides that a federal court may grant any equitable relief that may be appropriate or necessary for the benefit of investors. And it's just a coincidence that in first financial you'd already met the preliminary injunction factors but not essential to the holding? Certainly there's some overlap between what's necessary to prove up a preliminary injunction and what's necessary to prove a receiver's necessary. But first financial relies on section 27 of the Exchange Act and the equitable powers afforded district courts by that and those equitable powers do not depend on the existence of a preliminary injunction. Why wouldn't an injunction be more appropriate in this case than a drastic measure of a receivership? Yes, Your Honor. Preliminary injunction is primarily a tool to stop an ongoing violation of the securities laws. Here the issue primarily was not an ongoing violation of the securities laws. The offerings at issue had terminated sometime before this action was initiated. The primary concern was preservation of investor assets. And the assets at issue specifically require a receiver here because they require active participation. I think Mr. Barton's argued that these are just buildings or just pieces of land. You can just let them sit. They're not going to go anywhere. But I think the record is quite to the contrary. Mr. Barton had encumbered these pieces of property and if you look for example at the receiver's But if you're worried about dissipation, couldn't you order that some categories of transactions not occur? You're enjoined from engaging in this activity, that activity, different categories of transactions that wouldn't necessarily include his house? Well, yes, Your Honor. You could customize an injunction. Yes, Your Honor, but I believe Yes, and the receiver, excuse me, the district court considered a monitorship but rejected that and I think that goes to the fact that this requires kind of active oversight. The receiver's papers before this court demonstrate why that is necessary. For example, some properties were in foreclosure at the time the receiver was appointed. There was inadequate cash to service the debt of the properties. There's defaults with respect to some of the loans at issue such that lenders have taken equity interest in the property. And so it's not simply enough to say stop anything you're doing, stop selling properties. It requires active management to try to preserve these assets and that's aside from the fact that there's also investor funds spent on other things beyond the real property at issue including, for example, the airplane. Just circling back to the test again because here the district court just included a single sentence. It's necessary and appropriate and he sweeps in everything. Now it's over a hundred different entities and it's the government's position that that and you point us to First Financial, but it turns out the government had gotten an injunction there. So what other circuit case anywhere in the country allows for an immediate imposition of receivership over all assets that's even remotely comparable? What circuit case would you point to? I'm not aware of a case, Your Honor, addressing particularly those circumstances. It's certainly Well the circumstances is an immediate finding one sentence of co-mailing link and the target's entire asset picture is seized by the government. No evidence you're hearing. No injunction. I'm just wondering if you think that is the test. That's what the SEC can do. Why haven't we seen that in any other case and even the Fifth Circuit case you point to actually didn't do it? Well, Your Honor, I think it is probably an unusual circumstance in which a preliminary injunction would not be sought parallel with the receivership but I don't think the commission should be held to some different standard simply because it sought more tailored relief here. Some authority ever anywhere else because in your brief you cite the FDIC versus Faulkner, correct? Yes. That case, the man had been convicted and he'd been sentenced and then he had an evidentiary hearing and then the receivership was imposed. So I'm just asking you to point anywhere in the country, the SEC is very active and just signal some comparative case for us. Your Honor, if we looked at the Netsphere case, which Mr. Barton has urged to have applied, certainly the standard that the Court mentioned in Netsphere is not dependent on a preliminary injunction being in place. True, but we clearly don't, that Netsphere clearly no less drastic measures were considered. That's nowhere in his original work and nothing about balancing. So under Netsphere respectfully, but push back if you disagree, we would have to reverse the initial order unless we're permitted to use later in fact evidence to support it. Well, Your Honor, I don't think you would need to use later in time evidence to support it. I think if you look to the District Court's order denying Mr. Barton's motion to stay, yes, the later in time order, but it goes through the Netsphere factors and concludes that the District Court considered a monitorship and concluded that was not a sufficient remedy given the facts on the ground here, which is a very fact specific determination. Well, I'm certainly eager to look at Silverthorne from 1972. My gut would tell me the District Court was divested of jurisdiction as to this order as soon as they noticed an appeal, but maybe I'm wrong. Well, Your Honor, I think the District Court certainly had jurisdiction to consider Mr. Barton's motion for a stay pending appeal and issued that decision in response to that motion. Are you therefore agreeing with me that if but for looking at that later ruling, we wouldn't be able to affirm the original ruling if we apply the Netsphere test? Well, Your Honor, I think that's, I would disagree with that characterization. I think certainly the District Court's order appointing receiver finding it necessary and appropriate to put a receivership in place to protect investor assets demonstrates satisfaction of the same standard that Netsphere would apply under Mr. Barton's reading of it. But again, I don't believe that Netsphere is the appropriate standard here. Thank you, Your Honor. So I also would like to address one factual issue that came up earlier, which is the notion that there's substantially more assets that have been subject to receivership than are necessary to address the discouragement for the investor, should it come to that. That $70 million characterization is simply not fully accurate. The $70 million figure in the Hahn Declaration is not saying that the receivership has, the receivership entities have $70 million of assets. It's saying that they have interest in properties that were assessed at $70 million. That doesn't take into account how those properties are encumbered. It doesn't take into account the fact that those entities' interest in that property may be less than 100% in some cases. And again, I would direct the Court to the receiver's brief in this case, in which the receiver states that now having become the receiver and reviewed the assets at issue, the assets of the receivership entities potentially fall short of the $26 million of investor funds at issue in this case. I'd also like to address the Janvey case that Mr. Barton relies on with respect to his claim that tracing is required here. Janvey does not address the standard for placing an entity into a receivership. It addresses the standard for asserting claims against a relief defendant. The distinction is important, and Janvey can't just be applied to the receivership context, because in that case the Court was looking at the standard because it was determining whether it would have subject matter jurisdiction over claims against would-be claims asserted against the receivership entities that are not themselves relief defendants. And so it is entirely inapplicable. Last few seconds. Do you want to respond to the KeyBank case that Judge Gray has raised? In other words, if there were to be a remand, what would your position be as to the circumstances of the assets pending that hearing? Thank you, Your Honor. I would like to address that. Certainly, if there were a remand with respect to the receivership order, the Commission's position would be that some extent of time would be appropriate in light of the status of this case. And furthermore, in light of, regardless of what credence that this Court sees fit to give to Judge Starr's order denying the motion to stay, going through the net spurious factors, I think that the Court should take that into account were it to remand the case in terms of where the district court might be headed at the end of the day. Thank you. Thank you very much. Rebuttal. Thank you, Your Honors. I want to start with remedy and where the Court just left off. And I want to direct the Court to page 595 of the record. This is the receivership order where Judge Starr puts in to receivership the nine so-called wall entities that received the lender funds, 20 additional companies, and then any other company that Timothy Barton indirectly or indirectly received. There's layers of error here. We shouldn't have receivership in the first place. But when we get to some of these outer perimeter companies, which is most of them, I want to direct the Court to page 172 of the record. This is where the SEC employee who's providing evidence here, Carol Hahn, she says, well, there may have been lender funds that came into these other companies, but she's unable to determine it. And the suggestion that we're the reason why that can't be determined is just false. This investigation has been going on for two years. Mr. Barton sat for several interviews. He's been deposed. He's produced documents. Ms. Hahn and the SEC had all the relevant bank records. If it can't be determined at this point, the SEC has no excuse to shoot first and kind of ask questions later about where this property went. You just can't do that to property rights. And so I... Yeah, this is back on traceability. But as we go to remedy, Your Honors, if you give them an opportunity to rehabilitate their showing, which they haven't made yet, and you give them a period of time to do it, I think that period of time should only apply to the wall entities. You need to get these other corporations outside of this at this point, put them back in the control of the defendant, and give them some of his assets back. Because they didn't even come close to making the traceability showing, the subject property of the case showing that is required by Netsphere for 90% of these companies. We need to excise that phrase directly or indirectly controlled by Mr. Barton. Do you have the evidence readily available to go in and show why these companies should not have been included in the receivership? Well, Your Honor, I think there needs to be, there is a problem here. I mean, on a day in October, the district court dropped the receivership order. He was kicked out of his offices. He doesn't have access to his corporate records. And then the SEC and the district court has been taunting us ever since. Why aren't you putting more documents in front of us? What documents are we supposed to be putting in front of you? They're all with the receiver at this point. Why isn't Mr. Barton signing sworn declarations as this, that, and the other thing? They've charged him with a crime and we haven't even gotten the... Well, I was... No, no, no. I do want to answer Judge Clement's question. Do we have the proof ready to make the showing that the monies didn't go into this, right? I think that first that needs to start with the government providing its proof. It's their burden. We don't... Netsphere and JNV says we don't have to prove a negative. If they do begin to make a showing, I think we need to get access again to our corporate records to explain why the government is wrong. Are you familiar with the case he cited, Silverthorne? But this is... He's saying Silverthorne is authority for us to actually say the Netsphere test was met when he denied the... I mean, I wasn't cited in his briefs and I'm not up on 1970s... I wasn't born and I wasn't alive before 1976, so I'm not up on what the Fifth Circuit was saying back then. You probably thought about this issue. Yeah, but Your Honor, I think we cite, we actually do cite a case in our briefs in the first footnote that explains we can't have this kind of post hoc exercise where we're trying to figure out what the District Court would have done with evidence that wasn't before it. I mean, the District Court is relying on the reports of the receiver, which we can test to kind of re-manufacture a Netsphere analysis that he didn't go through. I also think that that ruling on his face is inadequate. Nobody here is driving at an imminent threat of asset flight. And I would direct the Court to page 9 of the SEC's brief and page 19 of the record. This is the motion for receivership by the SEC where they really drive at what their concern is here. They say a receiver would be better at calling balls and strikes on when to sell these real estate assets than Mr. Barton. They're not even contending that these assets are going to leave the jurisdiction. The reason they're not contending it is that this whole thing has been under investigation for two years and these assets have gone nowhere. They're planted in the ground and this is not the right case. This is not the right case for a receivership, Your Honor. Thank you, Your Honor. My time has expired unless the Court has any further questions. All right. Thank you, Mr. Aden. Thank you, Your Honor. All right. The Court will take this matter under advisement.